Tearle J. JARBOE, Plaintiff–Appellant,

v.

LANDMARK COMMUNITY NEWSPAPERS OF INDIANA, INC., and News Publishing Company, Inc., Barbara Friedman, Individually and in her capacity as General Manager of News Publishing Company, Inc., Defendant–Appellees.

No. 62S04–9412–CV–1213.

Supreme Court of Indiana.

Dec. 15, 1994.

Rehearing Denied May 26, 1995.

Michael C. Kendall, Kendall Law Office, Indianapolis, for appellant.

Richard A. Bierly, Barbara W. Gernert, Wyatt, Tarrant, Combs & Orbison, New Albany, for appellees.

James S. Cunning, Kevin C. Woodhouse, Ice Miller Donadio & Ryan, Indianapolis, for amicus curiae, The Indiana Legal Foundation.

ON PETITION TO TRANSFER

DICKSON, Justice.

This case arises from the alleged wrongful discharge of the plaintiff-appellant, Tearle J. Jarboe, by the defendants-appellees, Landmark Community Newspapers of Indiana, Inc., *et al.* (Landmark). Applying the employment-at-will doctrine, the trial court granted summary judgment for the defendants. The Court of Appeals reversed. *Jarboe v. Landmark Community Newspapers* (1993), Ind.App., 625 N.E.2d 1291.

The summary judgment proceeding presents the following assertions of fact. The plaintiff was hired by the defendant's predecessor company as a full-time employee in 1972. He subsequently worked with the defendant's predecessor and then the defendant until he was terminated on September 7, 1988. During the time that the plaintiff worked for the defendant, he possessed a copy of its employee manual, which described various policies such as sick leave. This manual put a three-month cap on the amount of sick leave which could be taken for any one incident. In 1981, the plaintiff's doctor, Dr. Heinrich, recommended surgery on the plaintiff's knee. The plaintiff then applied for and was granted sick leave. After approximately five months, the plaintiff returned to his position. In 1984, the plaintiff once again was informed by his doctor that he would require surgery. He requested and was granted sick leave and subsequently returned to work after approximately four months. Finally, in early May of 1988, the plaintiff was informed that his problems necessitated a total knee replacement. The doctor told the plaintiff that he wished to perform the surgery shortly thereafter; however, the plaintiff requested a one-month delay so that he could prepare his department for his absence. They scheduled the surgery for June 6, 1988. The next day the plaintiff spoke to defendant-appellee Barbara Freidman, his supervisor, concerning sick leave and the operation. He informed her that the doctor had estimated that he would be unable to work for approximately three months. In reply to this, Freidman stated: "[T]ake as long as you need, because your health is the most important thing." Record at 410–11. On June 6, 1988, the plaintiff entered the hospital and the necessary procedure was performed. After the surgery, it came to light that the plaintiff would be absent for a period of time potentially to exceed three months. Upon learning this fact, the plaintiff's supervisor contacted him and informed him that if he were unable to return to work by September 6, 1988, he would be terminated. The plaintiff was unable to return to his job in the allotted time and was thereafter discharged from the defendant's employ. After this discharge, the plaintiff continued to receive medical coverage and long-term disability benefits at sixty percent of his salary until after his physician unconditionally released him to return to work in early December, 1988.

In his appeal from the entry of summary judgment, plaintiff-appellant Jarboe presents two claims for review: 1) that the trial court erred in finding that his oral contract of employment was unenforceable under Indiana's Statute of Frauds, and 2) in the alternative, that Landmark is promissorily estopped from discharging him for not returning to work within a time period shorter than that promised to be permitted by his employer.

In Part II of its decision, the Court of Appeals determined that the trial court correctly ruled that Jarboe cannot recover on the breach of contract action because the oral contract for over one year is unenforceable under the Statute of Frauds. Ind.Code § 32–2–1–1. *Id.* We summarily affirm this determination. Ind.Appellate Rule 11(B)(3).

As to the plaintiff's promissory estoppel claim, the Court of Appeals reversed the summary judgment, finding such claim to be available and summary judgment precluded by the existence of genuine issues of material fact. *Jarboe,* 625 N.E.2d at 1295. The court characterized its opinion as deciding whether a person with an unenforceable oral employment contract "may pursue a wrongful discharge claim under the doctrine of promissory estoppel." *Id.* at 1292. The defendants seek transfer, asserting that the opinion of the Court of Appeals is in error in two respects: 1) it erroneously decides a new question of law by holding that an at-will employee can utilize the doctrine of promissory estoppel to enforce an alleged promise of continued employment, and 2) the plaintiff failed to present specific material facts to support the application of promissory estoppel. We grant transfer to address these matters.

The essence of the employment-at-will doctrine is that an employment contract of indefinite duration is presumptively terminable at the will of either party. *McClanahan v. Remington Freight Lines* (1988), Ind., 517 N.E.2d 390, 392; *Streckfus v. Gardenside Terrace Cooperative, Inc.* (1987), Ind., 504 N.E.2d 273, 275. The doctrine is deeply rooted in Indiana jurisprudence. *See Campbell v. Eli Lilly & Co.* (1980), Ind.App., 413 N.E.2d 1054, 1060. The doctrine has only rarely been limited. *See, e.g., Bochnowski v. Peoples Fed. Sav. & Loan* (1991), Ind., 571 N.E.2d 282, 285 (allowing claim for tortious interference with at-will employment relationship); *McClanahan v. Remington Freight, Inc.* (1988), Ind., 517 N.E.2d 390, 393 (holding that employee stated claim by alleging he was wrongfully discharged for refusing to commit criminal act for which he would be held personally liable); and *Frampton v. Central Ind. Gas Co.* (1983), 260 Ind.

249, 253, 297 N.E.2d 425, 428 (permitting claim for wrongful discharge when employee terminated for filing of worker's compensation claim).

Indiana courts have recognized a limited application of the doctrine of promissory estoppel in claims for damages resulting from a plaintiff's detrimental reliance on a defendant's promise of employment. The doctrine of promissory estoppel provides:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise. The remedy for breach may be limited as justice requires.

*Restatement (Second) of Contracts* § 90(1) (1981). As this Court noted with approval in *First National Bank v. Logan Manufacturing Co.* (1991), Ind., 577 N.E.2d 949, 956, Comment (d) to this section states:

[T]he same factors which bear on whether any relief should be granted also bear on the character and extent of the remedy. In particular, relief may sometimes be limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than the terms of the promise.... Unless there is unjust enrichment of the promisor, damages should not put the promisee in a better position than performance of the promise would have put him.

In *Pepsi–Cola General Bottlers, Inc. v. Woods* (1982), Ind.App., 440 N.E.2d 696, the court recognized a right of action for promissory estoppel where an employee quit her former employment in reliance upon a promise of employment with Pepsi. Noting "the problem here to be the measure of recovery," the court stated:

Under the promissory estoppel theory as stated in § 90 of the Restatement of Contracts, the *promise* which induces action is binding if injustice can be avoided only by *enforcing the promise.* The promise which Woods seeks to enforce is an employment of indefinite tenure which is unenforceable for vagueness.

440 N.E.2d at 699. The theory of promissory estoppel entitled the plaintiff in *Pepsi-Cola* only "to damages for expenses incurred in reliance on Pepsi's promise," and the court found "there was not sufficient proof of out-of-pocket expenses." *Id.* A claim for reimbursement of moving expenses and various sundry expenses occasioned by a plaintiff's reliance upon a promise of employment in another state was allowed in *Eby v. York–Div. Borg–Warner* (1983), Ind.App., 455 N.E.2d 623. In applying the doctrine of promissory estoppel to a promise of employment, *Eby* modified the Restatement's last element, referring to the remedy available to avoid injustice, from "enforcement of the promise" to "reimbursing the [plaintiffs]." *Eby,* 455 N.E.2d at 627.[1]

■ Reviewing *Pepsi–Cola, Eby,* and other cases, the Seventh Circuit Court of Appeals recently concluded:

In fact, the line Indiana draws is between expectation damages and reliance damages. In future wages, the employee has only an expectation of income, the recovery of which promissory estoppel will not support in an at-will employment setting. In wages forgone in order to prepare to move, as in moving expenses themselves, the employee gave up a presently determinate sum for the purpose of relocating. Both moving expenses and forgone wages were the hopeful employee's costs of positioning himself for his new job; moving expenses happen to be out-of-pocket losses, while forgone wages are opportunity costs. Both are reliance costs, not expectancy damages.

*D & G Stout, Inc. v. Bacardi Imports, Inc.* (7th Cir.1991), 923 F.2d 566, 569. We agree with this analysis and find it applicable to the case at bar. The doctrine of promissory estoppel may be available to an at-will employee, but the remedy is limited to damages actually resulting from the detrimental reliance and will not include the benefit of altering the employment status from an at-will relationship to a permanent one which requires just cause for termination. In contrast to the view arguably suggested by the language used by our Court of Appeals, we decline to authorize the use of promissory estoppel as a basis for general wrongful discharge damages.

■ The plaintiff contends that the facts favorable to him as summary judgment nonmovant indicate that the defendants made a definite promise that plaintiff's job would be waiting for him when he came back following rehabilitation; that in reliance on this promise, the plaintiff did not delay his surgery and did not "negotiate some other change or term for the leave with the employer"; and that, to prevent injustice, the defendants "should be estopped from breaking their promise." Brief of Appellant at 19–20. To the extent that the plaintiff's request for estoppel seeks to compel the defendants to resume their employment of the plaintiff, or seeks damages in the form of lost wages following his discharge, such requested relief represents expectancy damages, not reliance costs, and thus is not recoverable. Because Jarboe was released by his physician in December, any estoppel of Landmark from breaking their alleged promise of continued employment would then cease. Landmark could have discharged Jarboe immediately thereafter without incurring further liability. *See Pepsi–Cola,* 440 N.E.2d at 699.

■ Thus, any lost-wage damages to which Jarboe may be entitled on a theory of promissory estoppel would be limited to those incurred between the date of actual termination and the date of his release to return to work, less any disability benefits actually received by the plaintiff for this period of time. Relief awarded shall not include the restoration of his at-will employment nor damages for lost wages following the date of his medical release to return to work.[2]

---

1. Apart from the promissory estoppel theory, *Eby* also described a separate cause of action for constructive fraud, the elements of which included false material representation of past, existing, or promissory facts which induce reliance by the one relying, and an advantage to the promisor, thus producing an unconscionable advantage to one party over another. *Eby,* 455 N.E.2d at 628.

The appellate issue presented and argued by the Brief of the Appellant is that of promissory estoppel, not constructive fraud.

2. Our decision today is not guided by *Romack v. Public Service Co. of Indiana* (1987), Ind., 511 N.E.2d 1024, in which we adopted the view expressed in Judge Conover's dissenting opinion

In their transfer petition, the defendants, citing *First National Bank v. Logan Manufacturing Co.*, 577 N.E.2d 949, contend that the grant of summary judgment was correct because the plaintiff, as the party relying on the doctrine of promissory estoppel, failed to carry its burden to establish all facts necessary to support its application. They further argue that the plaintiff failed to designate specific material facts to the trial court pursuant to Indiana Trial Rule 56(C).

 *First National Bank* is not applicable. It involved an appeal from a final judgment, not a review of a summary judgment. The burden imposed at trial upon the party with the burden of proof on an issue is significantly different from that required of a non-movant in an Indiana summary judgment proceeding. Under Indiana's standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence. *See, e.g., Winkler v. V.G. Reed & Sons* (1994), Ind., 638 N.E.2d 1228, 1235; *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190; *Department of Revenue v. Caylor–Nickel Clinic* (1992), Ind., 587 N.E.2d 1311, 1313; *Marathon Petroleum v. Colonial Motel* (1990), Ind.App., 550 N.E.2d 778, 781; *Kauf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, 729; *Estate of Tanasijevich v. City of Hammond* (1978), Ind.App., 178 Ind.App. 669, 672, 383 N.E.2d 1081, 1083. *See generally* 3 W. Harvey, *Indiana Practice* § 56.9 (2d ed. 1988).

In this respect, Indiana's summary judgment procedure abruptly diverges from federal summary judgment practice. Under the federal rule, the party seeking summary judgment is not required to negate an opponent's claim. The movant need only inform the court of the basis of the motion and identify relevant portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.E.2d 265, 272. The burden then rests upon the non-moving party to make a showing sufficient to establish the existence of each challenged element upon which the non-movant has the burden of proof. *Id.* Indiana does not adhere to *Celotex* and the federal methodology.[3]

In the present case, the defendants do not support their motion for summary judgment with any designated evidence to establish the absence of a question of fact on an outcome-determinative issue as to the promissory estoppel claim. Merely alleging that the plaintiff has failed to produce evidence on each element of promissory estoppel is insufficient to entitle the defendant to summary judgment under Indiana law.

Transfer is granted. Except to the extent summarily affirmed as to the non-enforceability of the oral contract of employment, the opinion of the Court of Appeals is vacated. This cause is remanded to the trial court for further proceedings.

SHEPARD, C.J. and DeBRULER and GIVAN, JJ., concur.

SULLIVAN, J., concurs in result.

---

in the Court of Appeals decision, *Romack v. Public Service Co. of Indiana* (1986), Ind.App., 499 N.E.2d 768, 776–80 (Conover, dissenting). The precedential value of *Romack* is somewhat limited by its particular facts and because the principal issue was constructive fraud, not promissory estoppel. *Romack* allowed an action for wrongful discharge and required a finding of good cause necessary before termination of employment where "(1) the employer knows the employee had a former job with assured permanency (or assured non-arbitrary firing policies) and (2) [the employee] was only accepting the new job upon receiving assurances the new employer could guarantee similar permanen-

cy." *Romack*, 499 N.E.2d at 778. For an action based on constructive fraud, there must be a false material promissory representation which induces a detrimental reliance of the promisee and an advantage to the promisor. *Romack v. Public Serv. Co. of Ind.* (1986), Ind.App., 499 N.E.2d 768, 778–79 (Conover, dissenting), *adopted by this Court in Romack v. Public Serv. Co. of Ind.* (1987), Ind., 511 N.E.2d 1024.

3. Indiana is not the only state to take exception to the federal *Celotex* standard. *See, e.g., Berner v. Caldwell* (1989), Ala., 543 So.2d 686, 688.